IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHELLE CARPENTER,

    Plaintiff,

    vs.

FOREST MEADOWS OWNERS
ASSOCIATION, et al.,

    Defendants.

_____/

Case No. 1:09-cv-01918-JLT

ORDER RE: MOTIONS IN LIMINE

(Docs. 47-57)

    This matter now comes before the Court on the parties' motions in limine.  Defendant Forest Meadows Owners Association filed ten motions in limine, and Plaintiff Michelle Carpenter filed one motion in limine.   For the reasons set forth below, the Court rules as follows: Defendant's motion in limine numbers 2 and 5 are **GRANTED**; Defendant's motion in limine numbers 1, 3, 6, 7, 8 and 10 are **GRANTED IN PART** and **DENIED IN PART**; Defendant's motion in limine numbers 4 and 9 are **DENIED**; and Plaintiff's motion in limine is **GRANTED**.

**I.    BACKGROUND**

    Plaintiff presents claims under the Uniformed Services Employment & Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, et seq., and California Military & Veterans Code Section 394. (Doc. 1 at 9.)  Plaintiff alleges that she was discriminated against and wrongfully terminated from her employment as a security guard for Defendant because she took time off to fulfill her military service obligations with the United States Air Force Reserve.  (Id. at 6-9.)  Plaintiff now seeks to recover lost

1  wages (past and future) and punitive damages, among other things.  (Id. at 10.)

2       In accordance with the deadlines set by the Court in its pretrial order, the parties filed motions

3  in limine on July 5, 2011 (Docs. 47-57), filed their respective oppositions to the motions in limine on

4  July 19, 2011 (Docs. 60-70), and appeared for hearing on these matters on July 25, 2011.  Jury trial is

5  set for August 2, 2011 in this matter.  (Doc. 46.)

6  **II.      MOTIONS IN LIMINE**

7       **A.      Legal Standard**

8       A party may use a motion in limine to exclude inadmissible or prejudicial evidence before it is

9  actually offered at trial.  See Luce v. United States, 469 U.S. 38, 40 n.2 (1984).  A motion in limine is

10  "an important tool available to the trial judge to ensure the expeditious and evenhanded management

11  of the trial proceedings."  Jonasson v. Lutheran Child & Family Services, 115 F.3d 436, 440 (7th Cir.

12  1997).  It also reduces the likelihood that unduly prejudicial evidence will ever reach the jury, thereby

13  relieving the trial judge from the formidable task of neutralizing the taint of any prejudicial evidence.

14  See Brodit v. Cabra, 350 F.3d 985, 1004-05 (9th Cir. 2003) (citing Kelly v. New West Federal Savings,

15  49 Cal. App. 4th 659, 669 (1996)).

16       Motions in limine that seek exclusion of broad and unspecific categories of evidence, however,

17  are generally disfavored.  Sperberg v. The Goodyear Tire and Rubber Co., 519 F.2d 708, 712 (6th Cir.

18  1975).  Courts have recognized that it "is almost always better situated during the actual trial to assess

19  the value and utility of evidence."  Wilkins v. Kmart Corp., 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007);

20  Koch v. Koch Industries, Inc., 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998).  Therefore, when confronted

21  with the situation, "a better practice is to deal with questions of admissibility of evidence as they arise

22  [in actual trial]" as opposed to tackling the matter in a vacuum on a motion in limine.  Sperberg, 519

23  F.2d at 712.

24       Further, "a motion in limine should not be used to resolve factual disputes or weigh evidence."

25  C & E Services, Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 323 (D. D.C. 2008).  That is the province of

26  the jury.  See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 150 (2000).  Nor should a motion

27  in limine be used as a substitute for a motion for summary judgment.  C & E Services, 539 F. Supp. 2d

28  at 323.  One reason for this is that a motion in limine lacks the procedural safeguards encompassed in

2

a motion for summary judgment such as notice to the non-moving party that its claims or defenses will be dismissed unless it marshals actual evidence to support its position.  Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069-70 (3d Cir. 1990).

**B.**     **Defendant's Motions in Limine**

1.  Motion in Limine No. 1: Defendant's Financial Condition

Defendant moves to exclude evidence of its financial condition or wealth, including Plaintiff's Exhibits 10-14 and 95-102, until after Plaintiff has first established liability on the part of Defendant. (Doc. 47.)  Defendant contends that its financial condition is not relevant during the liability phase of trial, and introduction of such evidence at that time would only risk confusion of the jury and prejudice to Defendant.  (Id. at 3-4.)

At the pretrial conference, the parties agreed that the amount of the punitive damages would be bifurcated to a second phase of the trial though the liability determination would be made in the first phase.  Therefore, as a general matter, it is undisputed that evidence introduced solely for the purpose of establishing the amount of punitive damages, including evidence of Defendant's financial condition or wealth, shall be reserved for  the second phase of the trial.  Such evidence may not be introduced during the initial liability phase of trial.

Plaintiff argues, however, that Exhibits 95-102 are not intended to show Defendant's financial condition or address the issue of punitive damages. (Doc. 61 at 3.)  According to Plaintiff, Exhibits 95-102 contain photographs of Defendant's premises, including the guard shack where Plaintiff worked, the administrative office for the premises, the swimming pool that Plaintiff was required to guard on her patrol, and the front gate.  (Id. at 2-3.)  Plaintiff maintains that she intends to use the photographs to provide context for Plaintiff's employment duties and responsibilities, which is relevant in the liability phase of trial.  (Id. at 3.)

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402.  Relevant evidence, while generally admissible, may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.

Here, Exhibits 95-102 are relevant to the extent that the pictures will provide a foundation for the jury to understand the context of Plaintiff's work environment. See, e.g., Knox v. City of Monroe, No. 07-606, 2009 U.S. Dist. LEXIS 29454, at *34 (W.D. La. April 6, 2009) (denying motion in limine to exclude photographs of the plaintiffs's workspace because the "photographs are relevant and helpful to the jury in having a context for [the plaintiff's] work area"). In addition, Exhibits 95-102 do not pose a substantial risk of prejudice to Defendant. There seems to be little likelihood that a jury would view photographs of Defendant's premises, conclude that Defendant has significant financial resources, and as a result, develop a bias against Defendant. The Court therefore **DENIES** Defendant's motion in limine number 1 to the extent that Defendant seeks to exclude Exhibits 95-102.

As to Exhibits 10-14, Plaintiff has notified Defendant that she will not introduce these exhibits at trial. (Doc. 61 at 2.) Therefore, based upon Plaintiff's agreement not to introduce Exhibits 10-14 at trial, the motion related to these exhibits is **GRANTED**.

### 2. Motion in Limine No. 2: Special Needs of Plaintiff's Child

Defendant moves to preclude Plaintiff from introducing any evidence regarding the "special needs" of Plaintiff's child. (Doc. 48.) Defendant argues that such evidence is not relevant, and to the extent that it is, the probative value of the evidence is substantially outweighed by the unfair prejudice it would cause Defendant. (Id. at 3-6.) In response, Plaintiff has agreed to refrain from mentioning the fact that her child has "special needs." (Doc. 62 at 2.) Accordingly, the Court **GRANTS** Defendant's motion in limine number 2.

### 3. Motion in Limine No. 3: Deposition Testimony

Defendant moves to preclude Plaintiff from using deposition testimony of witnesses, in both written and video form, during opening statements, trial, and closing arguments unless the deposition is used for impeachment purposes or, if used for any purpose, it is first established that the witness is unavailable. (Doc. 49 at 3.) In addition, Defendant moves to exclude the videotaped deposition of Bob Nethery for any use because the instructions provided by Federal Rule of Civil Procedure 30(b)(5)(B) were not given during each segment of the deposition. (Id.)

4

a.  <u>Deposition Testimony as Substantive Evidence</u>

Federal Rule of Civil Procedure 32 governs the use of depositions "at a hearing or trial."  Fed. R. Civ. P. 32(a)(1).  Here, the parties agree that Rule 32(a)(3), specifically, is the pertinent provision in this case.  Rule 32(a)(3) provides: "An adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)."  Fed. R. Civ. P. 32(a)(3).

Defendant argues that none of the witnesses deposed by Plaintiff were party officers, directors, or managing agents *at the time they were deposed*.  (Doc. 49 at 5.)  Defendant asserts that Bob Nethery, Rick Brewer, and Liberty Smith, while board members at the time of Plaintiff's terminations, were no longer on the board at the time of their depositions.  (<u>Id.</u>)  Defendant also stresses that Veronica Lind, Kim Sturgeon, and John "Mike" Galloway were not employed by Defendant when they were deposed.  (<u>Id.</u>)  Finally, Defendant argues that Kristina Fillmore, although employed by Defendant at the time of her deposition, is simply an office worker and not a director or managing agent within the meaning of Rule 32(a)(3).  (<u>Id.</u>)

The Court agrees with Defendant on the issue of timing.  It is undisputed that Bob Nethery, Rick Brewer, Liberty Smith, Veronica Lind, Kim Sturgeon, and "Mike" Galloway were not party officers, directors, or managing agents *when they were deposed*.  In determining whether deposition testimony may be used against a party, this is the pertinent time frame under the plain language of Rule 32(a)(3).  <u>See</u> Fed. R. Civ. P. 32(a)(3).  Because the depositions of these witnesses do not satisfy the temporal requirement set forth in Rule 32(a)(3), they are not admissible under the rule.

Plaintiff's argument to the contrary is not persuasive.  Plaintiff cites <u>Independent Productions Corp. v. Loew's, Inc.</u>, 24 F.R.D. 19 (S.D.N.Y. 1959) to support the broad proposition that a witness' deposition is admissible if the witness *was* a managing agent in the past and "as long as there is '[an] absence of any danger that the witness might through animus make admissions against the [defendant] . . . [or] the witness would identify [the] defendant's interests with his own[.]'" (Doc. 63 at 3-4) (citing <u>Loew's</u>, 24 F.R.D. at 25).  However, the facts in <u>Loew's</u> are easily distinguishable and the reasoning in that case is inapplicable here.  Courts have limited the decision in <u>Loew's</u> to stand for the proposition that "a witness may be considered to be a managing agent of a corporation after his resignation only if

5

1   he still exercises some control or judgment over the daily affairs of the corporation or if the resignation

2   was effected in order to avoid the possibility that the witness could be deposed through service of a

3   deposition notice. E.E.O.C. v. Honda of Am. Mfg., Inc., 2:06-cv-0233, 2007 U.S. Dist. LEXIS 14496,

4   at *8 (S.D. Ohio Feb. 28, 2007). None of those circumstances are present here. Thus, the Court rejects

5   any application of Loew's (an out-of-circuit district court case decided in 1959) to this case and declines

6   Plaintiff's invitation to circumvent the express language of Rule 32(a)(3). See Hynix Semiconductor

7   Inc. v. Rambus Inc., No. C-06-00244 RMW, 2008 U.S. Dist. LEXIS 11767, at *18-19 (N.D. Cal. Feb.

8   2, 2008) (rejecting Loew's because it "over-extend[s] the coverage of Rule 32(a)(3)").

9          The deposition of Kristina Fillmore is a different matter. The question with respect to Kristina

10  Fillmore's deposition testimony is not whether the temporal limitation of Rule 32(a)(3) has been met,

11  but whether she is an officer, director, or managing agent within the meaning of Rule 32(a)(3). In this

12  regard, Defendant portrays the witness as an office worker primarily concerned with clerical work. (See

13  Doc. 49 at 5.) Plaintiff, on the other hand, elevates Kristina Fillmore, asserting that the witness' duties

14  include payroll, financial reporting, and overseeing the budget. (Doc. 63 at 6.) Plaintiff also stresses

15  that the witness has taken on more responsibility in the three months prior to her deposition and is now

16  assisting the General Manager manage staff. (Id.)

17         The term "managing agent" within the context of Rule 32(a)(3) "must be interpreted in light of

18  the person's duties, and in comparison to the other people listed in Rule 32(a)(3): 'officers,' 'directors,'

19  and 'Rule 30(b)(6) or 31(a)(4) designees.'" Hynix Semiconductor, 2008 U.S. Dist. LEXIS 11767, at

20  *17. "These other people all have the capability to bind the corporation with their actions, indeed, a

21  30(b)(6) or 31(a)(4) designee literally speaks for the corporation." Id. Thus, a "'managing agent' must

22  have some authority[, similar to an officer or director,] to act on behalf of the corporation or answer for

23  it." Id. at *18 (emphasis added).

24         Ms. Fillmore testified that three months before her deposition, her role as the "financial

25  administrator" changed to require her to assist part-time General Manager, Bill Kaiser, with "manag[ing]

26  the staff and association." (Doc. 68, Ex. A at 11:15 to 12:7.) This testimony lends credence to

27  Plaintiff's claim that Ms. Fillmore acted as a defacto general manager of the association due to Mr.

28  Kaiser's limited involvement. Still, it falls short. Notably, there is no explanation as to Ms. Filmore's

6

1   duties as the financial administrator.  Likewise, there is no explanation what "manag[ing] the staff and

2   association" entailed or the amount of discretion vested in the general manager at the time Ms. Fillmore

3   took on her new role.  At most, the declaration of Sarah Masters, the general manager during most of

4   the time Plaintiff worked for Defendant, demonstrates that at that time, this position was permitted to

5   make hiring decisions, at least to some extent.  (Doc. 68, Ex G at 1.)  There is no indication that this

6   power existed when Ms. Fillmore took on the new duties.  In any event, there is no indication that Ms.

7   Masters' hiring decisions did not have to be confirmed by the board members.[1]  Thus, this showing is

8   insufficient to demonstrate that Ms. Fillmore was "'a person invested by the corporation with general

9   powers to exercise [her] judgment and discretion in dealing with corporation matters'" at the time she

10  was deposed. Colonial Capital Co. v. General Motors, 29 F.R.D. 514, 516-17 (D.C. Conn. 1961).

11      As an alternative to Rule 32(a)(3), Plaintiff argues that the depositions in dispute are admissible

12  under Federal Rule of Evidence 801(d)(2).  (Doc. 63 at 6.)  Plaintiff maintains that because several of

13  the witnesses testified based on information they learned through the scope of their employment, their

14  testimony falls within Rule 801(d)(2)(D).  (Id. at 7.)  Plaintiff also contends that because several of the

15  witnesses are represented by Defendant's counsel in this litigation, their testimony is "authorized" and

16  falls within Rule 801(d)(2)(C).  (Id.)

17      The Court agrees that the Federal Rules of Evidence provide an independent basis from Rule

18  32(a)(3) for admitting deposition testimony.  See Fed. R. Civ. P. 32(a)(2) (depositions may be used for

19  "any other purpose allowed by the Federal Rules of Evidence");[2] Stanphill v. Health Care Serv. Corp.,

20  CIV-06-985-BA, 2008 U.S. Dist. LEXIS 64255, at *8-9 (W.D. Ok. Aug. 20, 2008) (in the absence of

21  authority under Rule 32(a)(3), deposition was still admissible under Rule 801(d)(2)).  Contra Kolb v.

22  County of Suffolk, 109 F.R.D. 125 (E.D.N.Y. 1985) (finding that Rule 801(d)(2) does not provide an

23  independent basis from Rule 32(a)(3) for admitting deposition testimony).  Nevertheless, the Court does

24

25      [1]  In fact, Defendant's CC&Rs indicate that the general manager reports to the board, who has the authority to hire

26  employees, although any of the Board's authority may be delegated.  (Doc. 68, Ex F at 2-3.)

27      [2]  The parties cite to Federal Rule of Civil Procedure 32(a)(8) for the proposition that the Federal Rules of Evidence
    provide an independent basis for admitting deposition testimony.  However, Rule 32(a)(8) deals with depositions taken in
    an earlier *other* action and therefore is not applicable.  See, e.g., Andrews Farms v. Calcot, Ltd., 693 F. Supp. 2d 1154, 1160-

28  61 (E.D. Cal. 2010) (in a federal case, admitting depositions taken in a separate prior state court action pursuant to Rule
    32(a)(8)).  The Court finds Rule 32(a)(2) to provide the pertinent authority.

1  not accept Plaintiff's attempt to use Rule 801(d)(2) to introduce wholesale deposition testimony into

2  evidence. Rule 801(d)(2) provides that a *statement* is not hearsay and is admissible if the party adopts

3  or otherwise authorizes a person to make the statement. See Fed. R. Evid. 801(d)(2). In other words,

4  Rule 801(d)(2) requires an individualized inquiry as to the admissibility of each statement.[3]  Because

5  Plaintiff has not provided the Court with specific statements that she wishes to introduce as evidence,

6  the deposition testimony of the above-noted witnesses cannot be deemed admissible under any section

7  of Rule 801(d)(2).

8       Therefore, the motion to exclude the introduction of the deposition testimony of Bob Nethery,

9  Rick Brewer, Liberty Smith, Veronica Lind, Kim Sturgeon, John "Mike" Galloway, Sarah Masters and

10  Kristina Fillmore based upon Federal Rule of Civil Procedure 32(a)(3), is **GRANTED**. However, the

11  deposition testimony may be used for other purposes if allowed under the Rules of Civil Procedure or

12  the Rules of Evidence.

13             b.  Deposition Testimony in Opening Statements

14       Defendant seeks to preclude Plaintiff from using deposition testimony during opening statements.

15  (Doc. 49 at 4.)  Defendant argues that actual evidence such as deposition testimony (video or transcript)

16  may not be introduced during this phase of trial.  (Id.)

17       The Court does not have such a rigid view of opening statements. The purpose of an opening

18  statement "is to state what evidence will be presented, to make it easier for the jurors to understand what

19  is to follow, and to relate parts of the evidence and testimony to the whole[.]" United States v. Dinitz,

20  424 U.S. 600, 612 (1976) (Burger, J., concurring). See Testa v. Village of Mundelein, 39 F.3d 443, 446

21  (7th Cir. 1996).

22       Plaintiff has indicated that she wishes to present portions of videotaped depositions in her

23  opening statement. She asserts that this practice has been encouraged by courts and, most notably, cites

24  a trial court order in the Northern District of California, Hynix Semiconductor, Inc. v. Rambus Inc., 2008

25  WL 5723744 (N.D. Cal. 2008), to support that very proposition. However, the Court's review of this

26  case is contrary. Judge Whyte precluded the use of deposition testimony in the opening statement. For

27

28       [3]  In contrast, Rule 32(a)(3) allows deposition testimony as a whole to be introduced as evidence because an officer or director speaks on behalf of the party during the entirety of the deposition.

example, in <u>Hynix Semicondiuctor Inc. v. Rambus Inc.</u>, 2008 U.S. Dist. LEXIS 51006, at *11-12 (N.D. Cal. 2008), the court held,

> There is sparse case law on whether a court should permit parties to play portions of video depositions in their opening statements. Indeed, the parties' briefing do not cite any cases involving civil jury trials. [Footnote] Nonetheless, one respected treatise recommends the practice as "very effective" advocacy. Jones, Rosen, Wegner, & Jones, Rutter Group Practice Guide: Federal Civil Trials & Evidence PP 6:272-6:275 (2007).
>
> The court is less sanguine regarding the practice. Videotaped testimony may seem more believable or important to the lay jury because it can both see and hear the witness. During argument, Rambus submitted that it cannot "preview" what its live witnesses will look like and testify to; it can only generally describe what it hopes to elicit. On the other hand, if unrestricted, a video deposition can be shown once in opening, again during trial (at least once), and in closing in the exact same form. Repeatedly showing the same few deposition segments seems to exalt the relevance of those videotaped shreds of evidence over live testimony. Cf. Federal Judicial Center, Effective Use of Courtroom Technology: A Judge's Guide to Pretrial and Trial, 156 (2001).
>
> Accordingly, the court grants Rambus's motion with respect to segments of videotaped deposition testimony. **Neither side shall use any videotaped deposition testimony in its opening statement. With respect to reading deposition transcripts, the court does not share Rambus's concerns about a lay jury giving undue weight to a verbatim reading.** Accordingly, the remainder of Rambus's motion is denied. If the parties wish to read a portion of a deposition transcript in their opening statement, they are to exchange any excerpt with opposing counsel sufficiently in advance of opening statements so that the court can rule on any dispute over use.

(Footnote omitted, emphasis added.) Likewise, in this same case, the court held also,

> An opening statement is limited to presenting a guide to the evidence that the parties reasonably believe will be admitted into evidence. **Quoting prior testimony, except that of a party, for impeachment purposes is inappropriate in an opening statement because the prior testimony may never become admissible.** This, of course, does not preclude the Manufacturers from stating in their opening statement that the evidence will show that Mr. Crisp was involved in Rambus's strategy to file divisional patent applications.

<u>Hynix Semiconductor Inc. v. Rambus Inc.</u>, 2008 U.S. Dist. LEXIS 11767, at *16 (N.D. Cal. 2008) (emphasis added). Once again, in the same case, the court ordered: "The court grants Rambus's motion with respect to segments of videotaped deposition testimony. Neither side shall use any videotaped deposition testimony in its opening statement." <u>Hynix Semiconductor Inc. v. Rambus Inc.</u>, 2008 U.S. Dist. LEXIS 12196, at *13 (N.D. Cal. 2008).

  The Court here shares the same concerns as the <u>Hynix</u> court. Reading a portion of the deposition transcript <u>of a party or a Rule 30(a)(3) witness</u> will be permitted during opening statements. However, because there is no assurance that any portion of any other deposition transcript may ever be admitted

1  at trial, no other deposition transcript may be read in opening statements.  See United States v. Taren-

2  Palma, 997 F.2d 525, 532 (9th Cir. 1993), overruled on other grounds, United States v. Shabani, 513

3  U.S. 10 (1994) ("Opening argument, like closing, should not refer to matters that are not to be presented

4  as evidence."); Thomas A. Mauet & Warren D. Wolfson, Trial Evid. 29-43 (3d ed. 2005) (explaining

5  that opening statements should not discuss inadmissible or unprovable evidence).  Video recordings of

6  the deposition will *not* be permitted.  Therefore, the motion is **GRANTED IN PART** and **DENIED IN**

7  **PART**.  If Defendant elects to use the deposition testimony of Plaintiff in its opening statement, it

8  SHALL notify Plaintiff's counsel of the portions of the transcripts to be read **no later than July 28,**

9  **2011**.

10                             c.  Videotaped Deposition of Bob Nethery

11        Defendant seeks to exclude the videotaped deposition (but not the transcript) of Bob Nethery for

12  all purposes, including impeachment, because certain instructions were not given before each segment

13  of the recording, as required under Federal Rule of Civil Procedure 30(b)(5)(B).  (Doc. 49 at 6-7.)

14  Pursuant to Rule 30(b)(5)(B), if a deposition is recorded nonstenographically, the officer administrating

15  the deposition must state on the record (i) his name and business address; (ii) the date, time, and place

16  of the deposition; and (iii) the deponent's name at the beginning of each unit of the recording medium.

17  See Fed. R. Civ. P. 30(b)(5)(A)-(B).   Defendant relies on Ott v. Stripe Law Firm, 169 F.R.D. 380 (E.D.

18  Okla. 1996), which determined that, in the absence of noted irregularities, the operation of the video

19  camera by the attorney taking the deposition was not sufficient grounds to merit striking the recording

20  of the deposition.

21        To overcome this limited holding, Defendant points to the fact that the attorney failed to repeat

22  the instructions required by Rule 30(b)(5)(B) at the beginning of each tape.  There is no dispute that this

23  did not occur.  On the other hand, Defendant does not point to anything in the video that gives rise to

24  the tiniest glimmer that the videotape is not authentic.  Instead, Defendant stands on a strict procedural

25  objection.  For her part, Plaintiff notes that here, unlike in Ott, the deposition of Bob Nethery was

26  recorded by a stenographer in addition to the deposition being video recorded.  Thus, it appears that the

27  accuracy of the video recording cannot be reasonably disputed.

28        Clearly, Rule 30(b)(5)(B) was enacted to ensure that the videotapes that purport to be the tapes

10

of the deposition actually are the tapes of the deposition.  See Pioneer Drive, LLC v. Nissan Diesel Am., Inc., 262 F.R.D. 552, 555 (D. Mon. 2009).  In this case, the written deposition transcript ensures there has been no falsification of the recordings.  Though the Court does not condone the failure to comply with the Rule, it does not either promote form over substance.  Thus, the motion to prohibit the use of the video recording is **DENIED** without prejudice to Defendant renewing the motion and therein pointing to some specific inadequacy of the video or other inconsistency with the deposition transcript that would provide a basis for the Court to infer an actual, as opposed to theoretical, unfairness in the use of the video recording of Bob Nethery.

4.  Motion in Limine No. 4: Lost Wages After October 8, 2008

Defendant moves to exclude evidence regarding lost wages incurred by Plaintiff after October 8, 2008.  (Doc. 50).  Defendant contends that under the United States Supreme Court's ruling in Ford Motor Co., v. E.E.O.C., 458 U.S. 219 (1982), Plaintiff's lost wages are limited by the fact that Plaintiff failed to mitigate her damages when she unreasonably declined an unconditional offer of reinstatement on October 8, 2008.  (Id. at 6-9.)

The threshold question here is whether Defendant's October 8, 2008 offer of reinstatement was "unconditional."  If the offer was unconditional, Plaintiff may only recover back pay accrued from the time she was first discharged to the time the offer of reinstatement was made on October 8, 2008.  See Ford, 458 U.S. at 232.  If, however, the offer was conditioned on Plaintiff compromising her claims, Plaintiff would have been under no obligation to mitigate her damages by accepting reinstatement.  See id. at 232 n.18.  In that case, Plaintiff could reject the offer and still recover all back pay accrued from the time she was first discharged to the date of any judgment rendered in this case.  See, e.g., Madden v. Chattanooga City Wide Serv. Dep't, 549 F.3d 666, 678-79 (6th Cir. 2008) (upholding award of back pay in employment discrimination case because defendant's offer of reinstatement was conditioned on plaintiff compromising his claims).

Defendant maintains that it did not impose "a single condition" in its offer to reinstate Plaintiff. (Doc. 50 at 4.)  Plaintiff, on the other hand, suggests that although not explicit, there is evidence in the record to support her position that the reinstatement offer was conditioned on Plaintiff settling her USERRA claim.  (Doc. 70 at 5.)  In particular, Plaintiff points to a series of e-mail communications

11

1  between her and Dennis Longyear, the assistant director in charge of Plaintiff's case at the United States

2  Department of Labor, Office of the Assistant Secretary for Veterans Employment and Training Services.

3  (Id. at 6.)

4        For example, in one e-mail, Mr. Longyear explained to Plaintiff his role including his efforts

5  toward achieving "settlement."[4]  (Doc. 59, Ex I at 22 (Bates 70).)  In another, Mr. Nethery, the President

6  of Defendant at the time, wrote to Mr. Longyear, "FMOA will pay 3 days average pay for the days Ms.

7  Carpenter could have been scheduled to work.  The check will be mailed under separate letter."  (Doc.

8  68, Ex D at 8 (Bates # 301).)  Mr. Nethery concluded the e-mail by stating, "Hopefully, this meets your

9  request and does satisfy Ms. Carpenter."  Id.

10       In response, Mr. Longyear characterized the offer of reinstatement and back pay as a "settlement

11  offer."  (Doc. 59, Ex I at 15 (Bates 61).)  Mr. Longyear instructed Mr. Nethery, "Please hold off sending

12  any check to Ms. Carpenter until I get a decision from her.  Plus for the protection of both parties I will

13  prepare a settlement agreement also."  Id.  There is no showing that at the time Defendant disputed that,

14  in fact, the offer was in settlement of the VETS complaint.

15       Finally, Mr. Nethery presented Defendant's offer to Plaintiff as follows:

16       I received a response back quicker than expected from [Defendant].  They want to put
         you back to work ASAP and pay your back wages that I calculate as 32 hours.  I know
17       you stated up front that you did not want to go back with them so I need your decision
         no later than Tuesday of this week so I can prepare a *settlement agreement*.  Either way
18       you decide you are still entitled to lost wages which I will obtain for you.

19  (Doc. 59-8 at 15) (emphasis added).  Plaintiff maintains that it was her belief all along that Defendant's

20  offer was contingent on her settling her claims.  (See Doc. 70 at 7.)

21       Even assuming the reinstatement offer was unconditional, the parties also dispute whether

22  Plaintiff's rejection was reasonable.  Whether a person reasonably rejected an offer of reinstatement is

23  "measure by an objective standard."  Smith v. World Ins. Co., 38 F.3d 1456, 1463 (8th Cir. 1994).  Here,

24  Plaintiff argues that she feared retaliation if she returned to work and the possibility that Defendant

25  would simply fire her shortly after reinstatement.  (See Doc. 59-8 at 9-11.)  Defendant counters that

26  Plaintiff's general fear of hostility is insufficient to carry her burden of establishing the reasonableness

27

28       _____
         [4] In fact, 38 U.S.C. § 4322(d) *requires* the DOL investigator "to resolve the complaint by making reasonable efforts
    to ensure that the person or entity named in the complaint complies with the provisions of this chapter."

1  of her rejection. (Doc. 50 at 8-9.) Defendant also notes that objectively reasonable grounds for rejecting

2  the offer, such as relocation expenses or medical limitations, are absent here. (See id. at 7, 9.)

3       The record is simply insufficiently developed at this time, and these factual disputes must be

4  resolved by the jury. See Ortiz v. Bank of America Nat'l Trust & Savings Assoc., 852 F.2d 383, 387

5  (9th Cir. 1987) (whether a person reasonably refused an offer of reinstatement is a question of fact for

6  the jury); E.E.O.C. v. Autozone, Inc., No. CV-06-1767-PCT-PGR, 2008 U.S. Dist. LEXIS 104461, at

7  *1-3 (D. Ariz. Dec. 16, 2008) (denying motion in limine because the court could not determine, as a

8  matter of law, whether an offer was an unconditional offer of reinstatement or whether the plaintiff's

9  rejection of the offer was unreasonable). Accordingly, Defendant's motion in limine number 4, to the

10  extent that it seeks to exclude evidence of Plaintiff's lost wages after October 8, 2008 is **DENIED**.

11      The parties have spent considerable energy arguing their positions in the event that the Court

12  finds that the offer is a settlement negotiation as opposed to an unconditional offer of reinstatement.

13  However, as explained above, the Court cannot reach that determination on this record at this time or

14  at this juncture. Arguably, the issue could have been properly addressed and resolved on a motion for

15  summary adjudication. See Bell v. Prefix, Inc., No. 05-74311, 2009 U.S. Dist. LEXIS 101889, at *9-10

16  (E.D. Mich. Nov. 2, 2009) (declining to address mitigation of damages issue on a motion in limine).

17  Because it was not, that issue will have to wait until trial. See, e.g., Autozone, 2008 U.S. Dist. LEXIS

18  104461, at *1-3 (court unable to decide on incomplete record if the offer was unconditional).

19      In any event, the document prepared by Veronica Lind was not an offer of settlement or conduct

20  or a statement made in compromise negotiations. Fed. R. Evid. 408(a). To the contrary, it was prepared

21  by Ms. Lind who believed it was merely to provide the Board a written record of the event that led up

22  to Plaintiff's firing. (Doc. 68, Ex. C at 157:11-20.) Moreover, the statement makes no concession to

23  wrongdoing but, instead, seems to assert that the firing was based only on Plaintiff's failure to report for

24  her scheduled shift when she was not on military duty and her failure to obtain a copy of the monthly

25  work schedule until September 27, 2008, despite that she was told that she was scheduled to work on

26  September 25, 2008, thus implying that Plaintiff failed to report for work. (Doc. 68, Ex. H.) Therefore,

27  to the extent that Defendant's motion in limine seeks to exclude the document prepared by Veronica

28  Lind based on Rule 408, it is **DENIED**.

13

1    Finally, the Court agrees that the offer of reinstatement is admissible to prove Plaintiff failed to

2    mitigate her damages, unless otherwise inadmissible under the Rules.  For the same reason, documents

3    included in the VETS files that demonstrate Plaintiff's rationale for failing to accept the offer, (i.e., her

4    state of mind) are similarly admissible, unless otherwise precluded by the Rules.  Thus, to the extent that

5    Defendant's motion in limine seeks to exclude this evidence based on Rule 408, it is **DENIED**.

6                    5.  Motion in Limine No. 5: Dennis Longyear's Opinions

7    Defendant seeks to exclude Dennis Longyear's opinions or statements wherein the investigator

8    expresses his belief that Plaintiff's USERRA claims have merit.  (Doc. 51.)  Defendant identifies two

9    specific communications where such statements were made.  First, in an e-mail dated October 6, 2008,

10   Dennis Longyear writes, "[Defendant] was clearly not understanding the law. . . .[Defendant] now has

11   a clear understanding of the USERRA law and I doubt that you [Plaintiff] will have any further problems

12   . . . ."  (Doc. 59-8 at 9.)  Second, in an e-mail and letter dated October 8, 2008, Dennis Longyear writes

13   to Defendant, "Although this investigation was nearly completed and I found merit in her [Plaintiff's]

14   claim . . . ."  (Id. at 6.)

15   Defendant presents three arguments to exclude these statements.  First, Defendant contends that

16   the statements are inadmissible hearsay.  (See Doc. 51 at 4-5.)  Although Defendant acknowledges that

17   the statements may fall within the scope of the public records exception to the hearsay rule, Defendant

18   argues that the statements should nevertheless be excluded because Dennis Longyear did not complete

19   his investigation and therefore his conclusions regarding the merit of Plaintiff's claims lack sufficient

20   trustworthiness.  (Id. at 5.)  Second, Defendant argues that the statements are unduly prejudicial and

21   should be excluded under Rule 403.  (Id. at 6.)  Third, Defendant asserts the general proposition that

22   Dennis Longyear may only testify on matters to which he has personal knowledge.  (Id. at 7.)

23   The Court finds Defendant's argument regarding Rule 403 to be the better one and therefore

24   addresses it now.  The probative value of Dennis Longyear's conclusions is minimal.  His statements

25   about Defendant's wrongdoing are nothing more than conclusory remarks.  The e-mails do not discuss

26   the underlying facts that Mr. Longyear's investigation revealed, nor do they explain the reasoning for

27   his conclusions.  Moreover, these conclusions, coming from a person in his position, carry with them

28   a strong likelihood the jury would conclude, based thereon, that Defendant did in fact violate Plaintiff's

14

1    rights under USERRA.  Specifically, the jury may be led to believe, inappropriately, that if the United

2    States Department of Labor concluded that Plaintiff's claims have merit, they should too.

3         For Plaintiff's part, she asserts that she has no intention of calling Mr. Longyear to testify except

4    as necessary to rebut evidence Defendant may present to demonstrate that the offer of reinstatement was

5    unconditional.  Though Plaintiff does not describe the nature of the expected testimony, it seems likely

6    that it would encompass what Defendant communicated to him about the reinstatement offer and what

7    he communicated to Plaintiff about the offer.  As to these topics, Mr. Longyear's conclusions about his

8    investigation would not be pertinent.

9         However, because the Court concludes that Mr. Longyear's conclusions should not be presented

10   to the jury, and to make clear that if Mr. Longyear testifies, his testimony will be limited to topics within

11   his percipient knowledge, excluding all conclusions or opinions he may have formed related to

12   Defendant's actions or motivations, the Court **GRANTS** Defendant's motion in limine number 5.  See

13   Fed. R. Evid. 403.[5]

14              6.  Motion in Limine No. 6: Declaration and Testimony of Sarah Masters

15        Defendant moves to exclude Sarah Masters' declaration and any opinion testimony she might

16   provide at trial as to why Plaintiff's employment was terminated.  (Doc. 52.)  Defendant contends that

17   the declaration is inadmissible hearsay.  (Id. at 4.)  As to Ms. Masters' opinion regarding why Plaintiff

18   was terminated from her position, Defendant argues that Ms. Masters was not employed by Defendant

19   at the time of Plaintiff's termination and therefore lacks personal knowledge of the events.  (Id. at 5.)

20   In addition, Defendant argues that because Ms. Masters was forced to resign from her employment with

21   Defendant, she is likely angry with Defendant and her testimony carries a serious risk of being unfairly

22   prejudicial to Defendant.  (See id. at 3, 5.)

23        In response, Plaintiff asserts that Sarah Masters will be available to testify at trial and therefore

24   Plaintiff intends to rely on her declaration solely for the purpose of refreshing the witness' recollection

25   at trial, if necessary.  (Doc. 69 at 3.)  Because introducing the declaration in lieu of the live testimony

26   would not be proper and because Plaintiff is not seeking to introduce it into evidence on this basis, the

27

28        [5]  To be clear, although Mr. Longyear may not testify as to his opinions or conclusions regarding the merits of
     Plaintiff's claims, Plaintiff may nevertheless testify on this matter as it relates to her state of mind in rejecting Defendant's
     offer of reinstatement.  Likewise, no other witness will be permitted to testify as to Mr. Longyear's conclusions.

1  Court **GRANTS** Defendant's motion in limine number 6 to exclude the declaration of Sarah Masters

2  except for purposes of impeachment or other purpose permitted by the Rules.

3      As to Sarah Masters' lay opinions, whatever they might be, the Court is not in a position at this

4  time to categorically exclude her testimony as irrelevant or lacking in foundation.  The parties do not

5  dispute that Ms. Masters was employed by Defendant as a general manager during a substantial portion

6  of Plaintiff's employment.  (See Doc. 52 at 3; Doc. 69 at 4.)  During her tenure as a general manager,

7  Ms. Masters was in charge of, and worked closely with, all security guard staff including Plaintiff.  (Doc.

8  69 at 4.)  Thus, she may have personal knowledge of events surrounding, or leading up to, Plaintiff's

9  termination despite that she was no longer employed by Defendant as of the official date of Plaintiff's

10 termination.  Thus, Ms. Masters will be allowed to testify as a percipient witness regarding those matters.

11     The fact that Ms. Masters was forced to resign from her employment also does not necessitate

12 a blanket exclusion of her testimony.  A witness may be hostile to a party for any number of reasons; a

13 potentially disgruntled ex-employee is nothing exceptional.  Defendant's remedy lays not in a motion

14 in limine but in cross-examination.  There, Defendant is free to unearth any bias, and the jury can weigh

15 the witness' credibility accordingly.[6]  Thus, for all the reasons set forth above, the Court **DENIES**

16 Defendant's motion in limine number 6 to the extent that it seeks to exclude Sarah Masters' anticipated

17 testimony regarding Plaintiff's termination.

18     7.  Motion in Limine No. 7: Kim Sturgeon's Remarks

19     Defendant seeks to exclude two categories of remarks made by Kim Sturgeon.  (Doc. 53.)  First,

20 Defendant seeks to exclude certain disparaging comments allegedly made by Kim Sturgeon about some

21 of Defendant's board members.[7]  (Id. at 3-4.)  Second, Defendant seeks to exclude remarks allegedly

22 made by Kim Sturgeon wherein she complained that it was inconvenient to reschedule Plaintiff's work

23 schedule to accommodate her military training.  (Id. at 3-5.)

24     a.  Disparaging Comments

25     Defendant argues that Kim Sturgeon's alleged disparaging comments have no probative value

26

27     [6]  Nevertheless, neither party is permitted to inquire as to the reasons why Sarah Masters was asked to resign.

28     [7]  Apparently, Plaintiff believes that at one point, Kim Sturgeon called board members names like "leprechaun," "limp dick," and "lip dick."  (See Doc. 53 at 4 n.1.)

16

1   and only cast the witness in a negative light.  (Id. at 4.)  Plaintiff argues in a conclusory manner that the

2   comments provide circumstantial evidence of pretext.  (Doc. 69 at 5.)  The Court, however, struggles

3   to see Plaintiff's position.  The comments appear to offer no insight as to whether Defendant discharged

4   Plaintiff for illegitimate reasons.  Accordingly, Defendant's motion in limine number 7 is **GRANTED**

5   as to this issue.  See Fed. R. Evid. 402.

6                              b.  Remarks Regarding Plaintiff's Schedule

7            Defendant argues that Kim Sturgeon's remarks regarding Plaintiff's scheduling difficulties are

8   "stray remarks."  (Doc. 53 at 4.)  Defendant emphasizes that it is undisputed that Kim Sturgeon did not

9   play a role in the decision to terminate Plaintiff's employment.  (Id.) (citing Doc. 46 at 5.)  Therefore,

10  in Defendant's view, the remarks are inadmissible.  (Doc. 53 at 4.)

11           In support of its argument, Defendant relies primarily on Harris v. Itzhaki, 183 F.3d 1043 (9th

12  Cir. 1999).  In Harris, the plaintiff, an African-American woman, brought three separate claims under

13  the Fair Housing Act against her landlord: (1) eviction notices that were contrary to established policy;

14  (2) disparate treatment of rental testers; and (3) discriminatory statement by a tenant who assisted the

15  landlord in operating the property.  Id. at 1047-48, 1052.  With respect to the third claim, the plaintiff

16  asserted that a representative of the owner stated, "The owners don't want to rent to Blacks." Id. at 1048.

17  In their defense, the defendants argued that the tenant was neither an agent nor an employee and

18  therefore the statement was inadmissible.  Id. at 1054.  The defendants also argued that the statement

19  was nothing more than a "stray remark" insufficient to establish discrimination because it was unrelated

20  to any decisional process.  Id. at 1055.  The Ninth Circuit, however, disagreed on both accounts and

21  found triable issues as to the tenant's agency and whether the tenant's statement had any nexus to the

22  rental decisionmaking process.  Id. at 1054-55.

23           Defendant also relies on Aucutt v. Six Flags Over Mid-America, 85 F.3d 1311 (8th Cir. 1996).

24  In Aucutt, the plaintiff claimed, among other things, that the termination of his employment was based

25  on discrimination against his age.  Id. at 1314.  On summary judgment, the district court ruled in favor

26  of the defendant.  Id. at 1314-15.  The plaintiff subsequently appealed, arguing that the district court

27  failed to give proper consideration to evidence that certain employees made statements showing age-

28  based animus.  Id. at 1315.  The Eighth Circuit disagreed and affirmed the lower court's decision.  The

1  Eighth Circuit explained that "even if made, [the] statements constitute 'stray remarks in the workplace

2  [or] statements by nondecisionmakers' and were therefore properly *disregarded* by the district court."

3  Id. at 1316 (emphasis added).

4      Both cases make clear that stray remarks are insufficient to *prove* discrimination.  See Merrick

5  v. Farmers Insurance Group, 892 F.2d 1434, 1438 (9th Cir. 1990).  Neither case, however, supports

6  Defendant's suggestion that stray remarks are per se inadmissible.  In Harris, the admissibility of the

7  statement centered on whether the tenant was an agent of the landlord, not whether the statement was

8  a stray remark.  This was of particular consequence in Harris because the Fair Housing Act under which

9  the action was brought explicitly makes it unlawful for an owner or his agent to make a discriminatory

10  statement in connection with the sale or rental of a dwelling.  See Harris, 183 F.3d at 1054 (citing 42

11  U.S.C. § 3604(c).  Such agency issues are not present here.

12      In regard to Aucutt, Defendant places too much meaning in the word "disregard."  The Eighth

13  Circuit did not hold that the district court properly excluded evidence of stray remarks, for that is not

14  what happened in the case.  Rather, the Eighth Circuit held that the district court properly found that

15  stray remarks was insufficient to establish a claim for discrimination and therefore summary judgment

16  in favor of the defendant was proper.  Here, the case is in a different procedural posture and the question

17  before this Court is not whether stray remarks are sufficient, in of themselves, to demonstrate a genuine

18  issue of material fact as to discriminatory intent.

19      On a motion in limine, the question before the Court is whether the remarks have any probative

20  value.  The Court can envision a scenario in which they do.  For example, Plaintiff may be able to show

21  that a decision maker overheard Kim Sturgeon's remarks or otherwise had knowledge of the remarks.

22  In that case, Plaintiff's proof of discriminatory intent is certainly bolstered.  Thus, while the remarks do

23  not alone establish Plaintiff's discrimination claims, they are relevant as circumstantial evidence.  See

24  Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1988) (O'Connor, J., concurring) (noting that stray

25  remarks, while alone insufficient to establish discriminatory intent, may nevertheless be probative of

26  such); contra Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (noting that in an action for

27  unlawful discrimination, statements amounting to "more than a 'stray remark'" are still "at best weak

28  circumstantial evidence of discriminatory animus").

18

1    Against this backdrop, Defendant fails to sufficiently explain why the probative value of the

2   remarks, while slight, is substantially outweighed by the danger of undue prejudice or confusion.  See

3   Fed. R. Evid. 403.  In the absence of such an explanation, the Court finds that Kim Sturgeon's remarks

4   regarding Plaintiff's scheduling difficulties are admissible, and Defendant's motion in limine number

5   7 is **DENIED** as to this issue.[8]

6            8.  Motion in Limine No. 8: Testimony of Garland Harrison and David Turner

7    Defendant moves to preclude testimony of Board Members Garland Harrison and David Turner

8   on the basis that their testimony is not relevant or, in the alternative, the probative value of the testimony

9   is substantially outweighed by the likelihood of undue prejudice, confusion of the issues, and needless

10   presentation of cumulative evidence.  (Doc. 54 at 3.)

11            a.  Garland Harrison

12    Defendant argues that Garland Harrison is not a relevant witness because he played no role in

13   the decision to terminate Plaintiff's employment.  (Id. at 7.)  In response, Plaintiff asserts that she no

14   longer intends to call Garland Harrison as a witness.  (Doc. 65 at 2.)  Thus, Defendant's motion in limine

15   number 8 is **GRANTED** to the extent that it seeks to exclude Garland Harrison as a witness.

16            b.  David Turner

17    Defendant maintains that David Turner is not a relevant witness because he has no personal

18   knowledge of Plaintiff's termination.  (Doc. 54 at 8.)  Defendant stresses that although David Turner is

19   currently the President of Defendant's Board of Directors, he was not a board member at the time of

20   Plaintiff's discharge.  (Id. at 7-8.)  In Defendant's view, the only information David Turner likely has

21   on this subject was gathered through materials that are protected by the attorney client privilege or the

22   work product doctrine.  (Id. at 10.)

23    Plaintiff disagrees.  Plaintiff avers that David Turner conducted his own personal investigation

24   into Plaintiff's termination and, through the investigation, has relevant, non-privileged information.

25   (Doc. 65 at 2, 4.)  In addition, Plaintiff argues that David Turner and Sarah Masters at one point met for

---

27       [8]  Defendant also suggests that Kim Sturgeon's remarks regarding Plaintiff's scheduling difficulties should be
excluded as inadmissible hearsay.  However, Defendant does not explain why that is so.  However, the context of the
28   testimony in which this evidence is adduced could impact this determination.  Thus, it is premature at this juncture to exclude
testimony on this matter based upon an abstract hearsay objection.

1  lunch and discussed Plaintiff's termination.  (Id. at 2.)  Plaintiff intends to inquire into the information

2  that was exchanged at that meeting.  (Id. at 3.)

3        The problem here is that neither party actually knows the substance of David Turner's testimony.

4  Neither party took the deposition of David Turner.  Defendant thus relies on the deposition of Sarah

5  Masters to argue that nothing substantive was discussed at the lunch meeting and that David Turner has

6  no non-privileged information.  Plaintiff, meanwhile, retains a belief that David Turner conducted a

7  personal investigation and had a substantive discussion with Sarah Masters.  Without a deposition to

8  reference, the Court cannot determine which version is accurate.  Therefore, the Court declines to

9  preclude David Turner from testifying on these matters.

10        The parties also disagree as to whether David Turner should be allowed to testify on the issue

11  of punitive damages.  Plaintiff contends that as President of Defendant's Board of Directors, David

12  Turner is in a position to testify on Defendant's current financial condition.  (Doc. 65 at 4.)  Defendant,

13  on the other hand, argues that David Turner's testimony would simply be duplicative of that provided

14  by Kristina Fillmore, Defendant's Financial Administrator.  (Doc. 54 at 11.)  Be that as it may, at this

15  juncture the Court declines to exclude witnesses on the ground that their anticipated testimony is

16  cumulative and unnecessary.

17        In sum, the Court **DENIES** Defendant's motion in limine number 8 to the extent that it seeks to

18  exclude David Turner as a witness.

19        9.  Motion in Limine No. 9: Punitive Damages

20        Defendant moves to preclude Plaintiff from introducing evidence of punitive damages under

21  California Civil Code Section 3294.  (Doc. 55.)  Defendant argues that California Military and Veterans

22  Code Section 394, the statute under which Plaintiff now brings her claims, does not allow an award of

23  punitive damages.  (Id. at 4.)

24        a.  Statutory Construction

25        The Court begins its statutory construction, "as always, with the text of the statute."  Hawaii v.

26  Office of Hawaiian Affairs, 556 U.S. 163, __, 129 S. Ct. 1436, 1443 (2009).  California Military and

27  Veterans Code Section 394 provides, in relevant part:

28        (a) No person shall discriminate against any officer, warrant officer, or enlisted member
      of the military or naval forces of the state or of the United States because of that

1   membership.  No member of the military forces shall be prejudiced or injured by any
    person, employer, or officer, or agent of any corporation, company, or firm with respect
2   to that member's employment, position or status or be denied or disqualified for
    employment by virtue of membership or service in the military forces of this state or of
3   the United States.
                                         * * *
4
    (c) No person shall prohibit or refuse entrance to any officer or enlisted member of the
5   Army or Navy of the United States or of the military or naval forces of this state into any
    public entertainment or place of amusement or into any of the places described in
6   Sections 51 and 52 of the Civil Code because that member wears the uniform of the
    organization to which he or she belongs.
7
    (d) No employer or officer or agent of any corporation, company, or firm, or other
8   person, shall discharge any person from employment because of the performance of any
    ordered military duty or training . . .
9                                        * * *

10  (g) Any person violating this section is guilty of a misdemeanor.  In addition, any person
    violating any of the provisions of this section shall be liable for actual damages and
11  reasonable attorney's fees incurred by the injured party.

12  (h) The remedies provided for in this section are not intended to be exclusive but are in
    addition to the remedies provided for in other laws, including Sections 51 and 52 of the
13  Civil Code.

14  Cal. Mil. & Vet. Code § 394(a), (g) & (h), emphasis added.

15       Under the plain language of the statute, a plaintiff may recover actual damages and reasonable

16  attorney's fees for violations of Section 394.  Cal. Mil. & Vet. Code § 394(g).  Less clear is whether he

17  may recover punitive or exemplary damages, which are not mentioned in the statute.  Defendant would

18  end the analysis here, invoking the general maxim that "where a new right, – one not existing at common

19  law, is created by statute and a statutory remedy for the infringement thereof is provided, such remedy

20  is exclusive of all others."  Orloff v. Los Angeles Turf Club, Inc., 30 Cal. 2d 110, 112 (1947).  See

21  Russell v. Pacific Railway Co., 113 Cal. 258, 261 (1896).

22       Plaintiff refers to Commodore Home Systems, Inc. v. Superior Court, 32 Cal. 3d 211 (1982) as

23  support for the contrary.  In Commodore, the California Supreme Court held that while not explicitly

24  provided, punitive damages were available under Section 12965 of the Fair Employment and Housing

25  Act (FEHA).  Id. at 215.  Central to the Commodore decision was the fact that though Section 12965

26  provided a civil cause of action, it was silent as to what substantive remedies a court could award.  Id.

27  at 216.  Because of this silence, the California Supreme Court assumed that it was the intention of the

28  Legislature to allow a prevailing plaintiff to recover all forms of relief, including punitive damages.  Id.

21

at 215.   The Court gave little moment to the fact that the Section 12965 provided for an award of attorneys fees.  Id. at 216. The Court held that the "sole aim" was to ensure that a successful plaintiff received attorneys fees given that they are not awarded absent statutory authority.  Id.  Thus, the Court concluded that, "There is no indication whatever that an award of punitive damages exceeds a court's powers" under FEHA.  Id at 215.

Contrary to Commodore, here, the statute is not silent as to the awardable damages but, instead, Cal. Mil & Vet Code Section 394 explicitly provides a plaintiff a substantive remedy: actual damages and attorneys fees.  However, Section 394 does not stop here.  It provides further, "The remedies provided for in this section are not intended to be exclusive . . . ."  Cal. Mil & Vets. Code § 394(h).

On its face, subsection (h) is ambiguous and open to interpretation.  One reading (the one argued by Plaintiff) is that the remedies listed in subsection (g) are not exclusive but are merely demonstrative, and a plaintiff may recover any remedy, including punitive damages, that is provided for by other state laws or California Civil Code Sections 51 and 52.  However, under this scenario, it is difficult to give a usual meaning to the phrase "*in addition to* the remedies provided for in other laws, including Sections 51 and 52 of the Civil Code" (Cal. Mil. & Vet. Code § 394(h),emphasis added) because, generally, actual damages are always available as a matter of course.  Further, California Civil Code Section 52 already allows a plaintiff to recover the civil remedies provided by subsection (g), namely actual damages and reasonable attorney's fees, though it also provides other damages.  See Cal. Civ. Code § 52(a) & (b).  Thus, the remedies of Section 394 would not be "in addition" to those of Section 52 but would merely duplicate some of the remedies provided in this statute.  In essence, "in addition to" would be rendered meaningless, as would much of subsection (g).  See Delaney v. Superior Court, 50 Cal.3d 785, 798-99 (1990) ("Significance should be given, if possible, to every word of an act.  Conversely, a construction that renders a word surplusage should be avoided.") (internal citation omitted).

Another reading of the subsection (the one proposed by Defendant) would give meaning to the words "in addition to" by essentially interpreting the word "remedies"to mean that a plaintiff is not confined to a cause of action under Section 394.  Defendant's rationale would mean that subsection (g) would retain its plain meaning and a plaintiff would only be able to recover actual damages and reasonable attorneys fees for violations of Section 394.  Subsection (h) then, would permit a plaintiff to

seek other damages under other causes of actions.[9]  The obvious defect in this approach is that it assumes the Legislature was imprecise in its choice of words and ignored that the word "remedy" is a term of art.

Nevertheless, the Legislative history to Section 394 provides some support for Defendant's position.  In 1991, Section 394 was amended to include the language that is now set forth in subsections (g) and (h).  1991 Cal ALS 36 (Deering's).  Notably, before this amendment, the only penalty imposed by Section 394 was a criminal misdemeanor charge.  Id.  Due to the 1991 amendment, however, a plaintiff could recover civil remedies.  It seems clear that the Legislature harbored concerns regarding the interplay between this new civil cause of action and other discrimination-based causes of action.  A reasonable conclusion is that the Legislature explicitly affirmed, through the language now present in subsection (h), that a plaintiff may recover the damages set forth in Section 394 and those set forth in other applicable statutes.

The Legislative comments that were provided in concert with the 1991 amendment to Section 394 demonstrate this intention:

> It is the intent of the Legislature that persons who are members of the military services not be harmed by virtue of that membership, with respect to their employment.
>
> It is further the intent of the Legislature to clarify that discrimination prohibited under subdivision (c) of Section 394 of the Military and Veterans Code is also prohibited by Sections 51 and 52 of the Civil Code, which apply to all arbitrary discrimination by business establishments.
>
> By providing a civil remedy for the class of persons covered by this legislation, the Legislature does not intend to limit the availability of a similar remedy for other forms of arbitrary discrimination which are not specifically listed in this act or in Sections 51 and 52 of the Civil Code.

Id.  Clearly, the Legislature recognized the state law-based civil cause of action afforded by Section 394, in particular subsection (c), may be pursued also under Civil Code Sections 51 and 52.[10]  However, it did not provide the same clarification as to any other subsection of Section 394 but, apparently, left available to plaintiffs all other causes of actions that the facts would support.  This is supported by an

---

[9]  Plaintiff dismisses this possibility.  Plaintiff argues that it is "illogical" that a plaintiff would need "permission" to seek remedies under multiple causes of action.  (Doc. 66 at 8.)  Nevertheless, such provisions do exist.  See, e.g., Cal. Civ. Code § 52(e) ("Actions brought pursuant to this section are independent of any other actions, remedies, or procedures that may be available to an aggrieved party pursuant to any other law.").

[10]  For example, a separate cause of action under Cal. Civ. Code 51.5 would seem entirely appropriate.

analysis of the two statutes specifically mentioned in Section 394, California Civil Code Sections 51 and 52, which reveals that a lawsuit based upon either subsection (a) or (d) would not support a cause of action under either of these sections.[11]

Even still, the manner of the 1991 amendment is curious in that the Legislature outlined the civil damages available in subsection (g) but, at the same time, added subsection (h) which seemingly provides a more expansive "catch-all" remedy. Thus, it appears to the Court, that the Legislature intended that actual damages and attorneys fees awardable under this section to be a minimum level of damages a plaintiff may obtain. Therefore, if other different remedies are available through other causes of action, then those provided in Section 394 would be "in addition to" them.

It is important to note that throughout California's Military & Veteran's Code, the Legislature provided limited damages, actual damages, reasonable attorney's fees, and costs, are available to injured service members. See § 401 (civil remedies limited to "actual damages, reasonable attorney's fees, and costs"); § 402 (same); § 404 (same); § 405 (same); § 406 (same); § 407 (same); § 408 (same); § 409.1 (same); § 409.3 (same); § 409.4 (same); § 812 (same); § 829 (same). In none of these other statutes did the Legislature indicate that the damages were not exclusive as it did in Section 394. Thus, it is clear that when the Legislature intends the remedies to be limited to those outlined, it knows how to do this. And, when it does not intend the remedies to be so limited, it knows how to do this also. Thus, the Court concludes that a plaintiff who brings her case under Section 394 is free to allege other causes of action to obtain other available damages.

On the other hand, as Plaintiff points out, the remedies outlined in California Civil Code Section 3294(a) do not constitute a separate cause of action but are obtainable, "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, malice, the plaintiff, in addition to the actual damages, may recover damages for the sale of example and by way of punishing the defendant." Therefore, the

---

[11] First, California Civil Code Section 51 does not apply to employment actions. Rojo v. Kilger, 52 Cal 3d 65, 77 (1990) ("The Unruh Civil Rights Act has no application to employment discrimination"). On the other hand, California Civil Code Section 52 is not a source of substantive rights. Instead, it outlines the remedies available for violations of California Civil Code Sections 51, 51.5 (Discrimination by business establishment prohibited), 51.6 (Gender tax repeal), 51.7 (Freedom from violence) and 51.9 (Sexual harassment). As to these, Defendant fails to identify any which would apply to the factual circumstances of Section 394(a) or (d) and the Court is at a loss to find that any would apply to the allegations as the Court knows them.

1    Court concludes that Section 394 permits Plaintiff to recover punitive damages under California Civil

2    Code § 3294(a) which is a "remed[y] provided for in other laws."  Section 394(h); Commodore, 32

3    Cal.3d at 215. ("When a statute recognizes a cause of action for violation of a right, all forms of relief

4    granted to civil litigants generally, including appropriate punitive damages, are available unless a

5    contrary legislative intent appears.")  Likewise, for the reasons set forth above the Court does not agree

6    that damages are limited to California Civil Code Section 52(a) or any other subsection of that statute

7    because, factually, none of the causes of action for which section 52 provides a remedy apply here.

8    Therefore, the motion is **DENIED**.[12]

9                    10.  Motion in Limine No. 10: Plaintiff's Exhibits

10        Defendant moves to preclude Plaintiff from introducing numerous exhibits into evidence.  The

11   contested exhibits are discussed in numerical order below.

12                         a.  Exhibit 9 (1)[13]

13        Plaintiff's Exhibit 9 contains the minutes of Defendant's Board of Director's meeting on May

14   20, 2008.  (Doc. 67 at 2.)  During hearing, Plaintiff withdrew this exhibit as evidence.  Accordingly,

15   Defendant's motion in limine number 10 is **GRANTED** on this issue.

16                         b.  Exhibits 10-14

17        As indicated in the Court's discussion of Defendant's motion in limine number 1, Plaintiff has

18   withdrawn Exhibits 10-14.  (Doc. 61 at 2.)  Accordingly, Defendant's motion in limine number 10 is

19   **GRANTED** on this issue.

20                         c.  Exhibit 30 (4)

21        Plaintiff's Exhibit 30 is Defendant's CC&Rs and By-laws, which contains a job description of

22   Bob Nethery.  (Doc. 46 at 20.)  Defendant argues that the exhibit is not relevant under Rule 402 and is

---

24   [12]  Even had the Court not found that punitive damages are recoverable under Section 394, it would have granted Plaintiff's request to amend the complaint to restore the cause of action for termination in violation of public policy.  Despite this late-hour, the Court sees no prejudice in allowing Plaintiff to do so because the fact questions are the same nor is there any evidence of bad faith by Plaintiff.  Moreover, the amendment would not be futile.  See Roberts v. Ford Aerospace & Communications Corp., 224 Cal. App. 3d 793, 798 (1990) (plaintiff may recover punitive damages under FEHA for discrimination in violation of public policy).

27   [13]  Subsequent to the filing of the parties' motions in limine, Plaintiff withdrew and re-orientated certain exhibits. Therefore, the exhibit numbers referenced in the parties' motions in limine do not correspond with the Plaintiff's exhibits as contained in her exhibit binder.  The numbers in parenthesis cite to the exhibits as they are contained in Plaintiff's exhibit binder.

inadmissible hearsay under Rule 802.  (Doc. 57 at 4.)  Plaintiff counters, and the Court agrees, that the set of CC&Rs outline the Board's authority which is relevant because, arguably, this shows that Bob Nethery's actions were done in his capacity as a board member and are therefore attributable to Defendant.  As to Defendant's hearsay objection, the Court finds that any hearsay determination must wait until the context in which the exhibit is introduced is known.  Accordingly, Defendant's motion in limine number 10 is **DENIED** as to this issue.

### d.  Exhibit 33

Plaintiff has withdrawn Exhibit 33.  (Doc. 67 at 3.)  Therefore, Defendant's motion in limine number 10 is **GRANTED** on this issue.

### e.  Exhibit 35 (58)

Plaintiff's Exhibit 35 is the declaration of Sarah Masters.  (Doc. 46 at 20.)  As indicated in the Court's discussion of Defendant's motion in limine number 6, Plaintiff proposes to use the declaration only to the extent necessary to refresh Ms. Master's memory when she testifies.  (Doc. 69 at 3.)  Thus, because Plaintiff has no intention of using Exhibit 35 as substantive evidence, Defendant's motion in limine number 10 is **GRANTED** on this issue.

### f.  Exhibit 40 (5)

Plaintiff's Exhibit 40 is the document prepared by Veronica Lind regarding the termination of Plaintiff's employment.  (Doc. 67 at 4.)  The Court has already discussed this matter in connection with Defendant's motion in limine number 4.  There, the Court explained that Veronica Lind's statement to the Board of Directors does not fall within the exclusionary scope of Rule 408 because the document was not made in furtherance of settlement negotiations.  See Fed. R. Evid. 408.  Therefore, for all the reasons already discussed by the Court above, Defendant's motion in limine number 10 is **DENIED** as to this issue.

### g.  Exhibit 44

Plaintiff's Exhibit 44 contains a "special needs consult" regarding Plaintiff's daughter.  (Doc. 46 at 20.)  As noted in the Court's discussion of Defendant's motion in limine number 2, Plaintiff no longer seeks to offer evidence of her daughter's "special needs" and has withdrawn Exhibit 44.  (See Doc. 62 at 2.)  Thus, Defendant's motion in limine number 10 is **GRANTED** on this issue.

h. Exhibit 54

Plaintiff has withdrawn Exhibit 54. (Doc. 67 at 3.) Therefore, Defendant's motion in limine number 10 is **GRANTED** on this issue.

i. Exhibits 60-61 (6-7)

Plaintiff's Exhibit 60 is Plaintiff's 2005 W-2 statement, and Plaintiff's Exhibit 61 is Plaintiff's 2007 W-2 statement. (Doc. 46 at 21.) Defendant argues that the documents are irrelevant under Rule 402, unduly prejudicial under Rule 403, and constitutes inadmissible hearsay under Rule 802. (Doc. 47 at 5.) The Court agrees with Defendant that these documents constitute inadmissible hearsay. In any event, during hearing on this matter, Plaintiff clarified that these exhibits were marked for the purpose of identification only. Thus, Defendant's motion in limine number 10 is **GRANTED** on this matter.

j. Exhibit 64

Plaintiff has withdrawn Exhibit 64. (Doc. 67 at 5.) Therefore, Defendant's motion in limine number 10 is **GRANTED** on this issue.

k. Exhibit 65 (8)

Plaintiff's Exhibit 65 contains "Request and Authorization for Active Duty and Training" letters, which request that Plaintiff report to the Air Force Reserve for training from May 12, 2008 to May 14, 2008 and from September 1, 2008 to September 14, 2008. (Id. at 6.) During hearing, Plaintiff clarified that she did not intend to introduce this exhibit as substantive evidence. Thus, Defendant's motion in limine 10 is **GRANTED** on this issue.

l. Exhibit 66 (9)

Plaintiff's Exhibit 66 contains a "Security Officer Registration - Renewal Application." (Doc. 46 at 21.) Defendant challenges the document as not relevant and as inadmissible hearsay. (Doc. 57 at 4.) Plaintiff counters that the document is relevant in demonstrating that Plaintiff is qualified to hold the position of security officer during the time of her termination. (Doc. 67 at 3.) As to Defendant's hearsay objection, Plaintiff argues that the document is admissible under the business records exception to the hearsay rule. (Id.)

The Court finds that the document is relevant in that the renewal of Plaintiff's security guard license may speak to her efforts at mitigating damages. With respect to Defendant's hearsay objection,

1   the Court reserves it ruling until the context in which Plaintiff's attempt to introduce the document into

2   evidence becomes clearer.  For these reasons, Defendant's motion in limine number 10 is **DENIED** as

3   to this issue.

4                            m.  Exhibit 82 (14-16)

5       Plaintiff's Exhibit 82 is the case file on Plaintiff's claim with the United States Department of

6   Labor.  (Doc. 46 at 22.)  At hearing on this matter, Defendant clarified that its motion in limine on this

7   matter was dependent on the Court's ruling on whether Defendant's offer constituted an unconditional

8   offer of reinstatement or a settlement negotiation.  Because the Court was unable to decide on the facts

9   presented in the record, Defendant stated that it may now wish to utilize documents contained in this

10  exhibit depending on the developments at trial.  In light of this, the Court **RESERVES** ruling on this

11  matter.  However, any attempt to introduce any of these documents SHALL be consistent with the

12  Court's ruling on Defendant's Motion in Limine #5.

13                            n.  Exhibits 83-92

14      Plaintiff has withdrawn Exhibits 83-92.  (Doc. 67 at 6.)  Thus, Defendant's motion in limine

15  number 10 is **GRANTED** on this issue.

16                    o.  Exhibits 95-102 (24-42, 44-47)[14]

17      Plaintiff's Exhibits 95-102 include photographs of Defendant's premises.  (Doc. 46 at 23.)  As

18  already indicated in the Court's decision of Defendant's motion in limine number 1, these exhibits are

19  admissible.  Accordingly, Defendant's motion in limine number 10 is **DENIED** on this issue.

20                            p.  Exhibit 103

21      Plaintiff has withdrawn Exhibit 103.  (Doc. 67 at 6.)  Therefore, Defendant's motion in limine

22  number 10 is **GRANTED** on this issue.

23                        q.  Exhibits 104-106 (48-50)

24      Plaintiff's Exhibits 104-106 are three certificates of achievement.  (Doc. 46 at 23.)  Defendant

25  contends that the certificates are irrelevant, unduly prejudicial, and constitute inadmissible hearsay.

26  (Doc. 57 at 8.)  Plaintiff argues that the certificates demonstrate her skill as a security guard and are

27  admissible under either the business record or public record exceptions to the hearsay rule.  (Doc. 67 at

28

---

[14]  During hearing, Plaintiff withdrew the exhibit marked 43 in Plaintiff's exhibit binder.

6.)

The Court find the three certificates to be inadmissible hearsay.  The documents do not fall within the scope of the business record or public record exceptions to the hearsay rule.  Accordingly, Defendant's motion in limine number 10 is **GRANTED** on this issue.

r.  Exhibit 107

Plaintiff has withdrawn Exhibit 107.  (Doc. 67 at 5.)  Therefore, Defendant's motion in limine number 10 is **GRANTED** on this issue.

s.  Exhibit 108 (51)

Plaintiff's Exhibit 108 is a memorandum from Captain Jennifer Leone for Plaintiff.  (Doc. 46 at 23.)  At hearing, Plaintiff clarified that this exhibit will be used only to refresh Plaintiff's memory if necessary at trial.  Because Plaintiff is not seeking to introduce this exhibit as substantive evidence, Defendant's motion in limine number 10 is **GRANTED** on this issue.

t.  Exhibit 127

At hearing, Plaintiff indicated that she has withdrawn Exhibit 127.  Accordingly, Defendant's motion in limine number 10 is **GRANTED** on this issue.

u.  Exhibit 128 (17)

Plaintiff's Exhibit 128 contains portions of the Federal Register.  (Doc. 46 at 24.)  At hearing, Plaintiff clarified that she does not intend to admit this exhibit into evidence.  Defendant's motion in limine number 10 is **GRANTED** on this issue.

v.  Exhibits 129-131 (14)

Plaintiff's Exhibits 129-131 contain correspondence between Dennis Longyear, Veronica Lind, and Defendant.  (Id. at 24-25.)  This matter is duplicative of the issue raised in Exhibit 82 above.  As indicated in the Court's discussion there, the Court **RESERVES** ruling on this matter.

**C.      Plaintiff's Motion in Limine**

Plaintiff seeks to exclude Defendant's Exhibits 50 and 52 on the grounds that the exhibits are not relevant, are unduly prejudicial, and are likely to confuse or mislead the jury.  (Doc. 56 at 2-3.)  Exhibit 50 contains a picture of Bob Nethery (the employee who terminated Plaintiff's employment), among others, holding American flags.  (Doc. 60 at 1.)  Exhibit 52 contains a photograph of a flagpole

29

1  with an American flag on Defendant's premises.  (Doc. 56 at 2.)

2      The probative value of Exhibit 50 is slight, and the probative value of Exhibit 52 is even less.

3  The fact that at one point in time, Bob Nethery held an American flag or the fact that there is a flagpole

4  with an American flag on Defendant's premises sheds no light on whether Defendant chose to discharge

5  Plaintiff because of her military obligations.  At the same time, Exhibits 50 and 52 pose a risk that the

6  jury may confuse the issues and find for Defendant merely because they believe, as a general matter, that

7  Defendant is patriotic.  Accordingly, Plaintiff's motion in limine is **GRANTED**.  <u>See</u> Fed. R. Evid. 403.

8  Exhibits 50 and 52 may not be introduced as evidence at trial.

9  **III.      CONCLUSION**

10     In accordance with the above, it is **HEREBY ORDERED** that:

11     1.      Defendant's motion in limine numbers 2 and 5 (Docs. 48 & 51) are **GRANTED**;

12     2.      Defendant's motion in limine numbers 1, 3, 6, 7, 8, and 10 (Docs. 47, 49, 52, 53, 54 &

13             57) are **GRANTED IN PART** and **DENIED IN PART** as provided in this order;

14     3.      Defendant's motion in limine numbers 4 and 9 (Docs. 50 & 55) are **DENIED**; and

15     4.      Plaintiff's motion in limine (Doc. 56) is **GRANTED**.

16  IT IS SO ORDERED.

17  Dated:   **July 26, 2011**                                        **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE